IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LARRY WEST,                    :
      Petitioner,        :        1:12-cv-2294
                  :
  v.                           :        Hon. John E. Jones III
                  :
DAVID VARANO, *et al.*,         :
      Respondents.       :

## MEMORANDUM

**December 12, 2014**

## THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

On November 12, 2012, Petitioner, Larry West, an inmate currently confined

at the State Correctional Institution in Coal Township, Pennsylvania, ("SCI-Coal

Township"), filed the instant petition for writ of habeas corpus pursuant to 28

U.S.C. § 2254.  (Doc. 1).  He challenges a 2006 conviction and sentence imposed

by the Court of Common Pleas of Luzerne County, Pennsylvania.  (Doc. 1).  For

the reasons that follow, the petition will be denied.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts have been extracted from the Pennsylvania Superior

Court's January 10, 2012 Memorandum affirming the PCRA court's order denying

relief, in which the Superior Court summarizes the facts as follows:

> On June 17, 2005, [West] was charged with multiple crimes in
> connection with his repeated sexual assault of two minor females over

the course of a two-year period.  *See* Complaint, 6/17/05; Certified
Record (C.R.) at 1.  [West] proceeded to a jury trial and was
subsequently found guilty of indecent exposure, two counts of
criminal attempt - aggravated indecent assault, and four counts each of
indecent assault, corruption of minors, endangering the welfare of
children, and criminal attempt - involuntary deviate sexual
intercourse.[1]  C.R. at 6.  Sentencing was deferred pending an
evaluation by the Sexual Offender Assessment Board to determine
whether [West] should be classified as a sexually violent predator
(SVP) under Megan's Law.[2]  On October 3, 2006, the trial court
determined that [West] met the criteria of an SVP.  C.R. at 8.  That
same day, [West] was sentenced to an aggregate term of nine to 18
years' imprisonment, followed by five years' probation.  *Id.*

At all relevant times during the trial and sentencing phases, [West]
was represented by Stephen Urbanski, Esquire (Attorney Urbanski).
On October 26, 2006, Attorney Urbanski was granted permission to
withdraw, and Robert T. Yurchak, Esquire and Cynthia S. Ray,
Esquire entered their appearance on behalf of [West].  C.R. at 9.
[West] filed a timely notice of appeal on October 27, 2006.  C.R. at
10.  On January 19, 2007, the trial court directed [West] to file a
concise statement of matters complained of on appeal pursuant to
Pa.R.A.P. 1925(b).  C.R. at 11.  [West] filed his Rule 1925(b)
statement on January 31, 2007, raising 22 allegations of ineffective
assistance of trial counsel, 19 challenges to the sufficiency of the
evidence, and nine additional issues.  C.R. at 12.  The trial court, upon
direction from this Court, filed a Rule 1925(b) opinion on July 27,
2007.  C.R. at 16, 17.

On April 28, 2008, this Court affirmed [West's] judgment of sentence,
deferring his allegations of trial counsel's ineffectiveness to collateral
review.  *See Commonwealth v. West*, 953 A.2d 842 (Pa. Super. 2008)
(unpublished memorandum); C.R. at 18.  [West] did not seek an
allowance of appeal with our Supreme Court.  Thereafter, on March

---

[1]  18 Pa.C.S.A. §§ 3127, 901 (3125), 3126, 6301, 4304, and 901 (3123), respectively.

[2]  42 Pa.C.S.A. §§ 9791-9799.9.

24, 2009, [West] filed a timely PCRA petition, alleging 24 allegations
of ineffectiveness on the part of his trial counsel, Attorney Urbanski.
C.R. at 20.  On May 13, 2009, the Commonwealth filed an answer to
[West's] PCRA petition.  C.R. at 21.  On April 15, 2010, [West] filed
an addendum to his PCRA petition.  C.R. at 26.  The PCRA court held
evidentiary hearings on [West's] PCRA petition on July 1, October 6,
and October 26, 2010.  Following the hearings, the PCRA court
denied [West's] PCRA petition on December 30, 2010.  C.R. at 39.

(Doc. 11-1, pp. 2-4, Pennsylvania Superior Court Opinion dated January 10, 2012).

West filed a timely appeal to the Pennsylvania Superior Court, which affirmed the

opinion of the PCRA court denying relief.  (*Id.*).

On November 12, 2012, West filed the instant petition for writ of habeas

corpus.  (Doc. 1).  In accordance with *United States v. Miller*, 197 F.3d 644 (3d

Cir. 1999), and *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000), formal notice was

issued to West that he could either have the petition ruled on as filed, that is, as a §

2254 petition for writ of habeas corpus and heard as such, but lose his ability to file

a second or successive petition, absent certification by the court of appeals, or

withdraw his petition and file one all-inclusive § 2254 petition within the one-year

statutory period prescribed by the Antiterrorism Effective Death Penalty Act

("AEDPA").  (Doc. 4).  On December 26, 2012, West returned the notice of

election, indicating that he wished to proceed with his petition for writ of habeas

corpus as filed.  (Doc. 5).

West filed a Memorandum in support of his petition on January 11, 2013.

(Doc. 6).  On April 12, 2013, Respondents filed a response to the habeas petition.

(Docs. 11, 12).  West filed a traverse on May 23, 2013.  (Doc. 16).

The petition is now before the Court for consideration.  In the petition, West raises the following grounds for relief:

> (1) the cumulative effect of counsel's over-all substandard performance;
> (2) the specific constitutionally deficient acts/omissions of counsel;
> (3) the trial court's admitted inability to exercise sound judgment stemming from it's [sic] own substance abuse/gambling/pending legal issues; and,
> (4) the trial court's inability to have lawfully assumed subject matter jurisdiction thereover Petitioner West's criminal matter stemming from that jurist's violation of it's [sic] oath of office incidental to [former] judge Toole's allocution to and attendant conviction of federal criminal charges.

(Doc. 1, p. 14; Doc. 6, p. 19).

## II.    STANDARDS OF REVIEW

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §

2254(a); *Estelle*, 502 U.S. at 67-68 (1991); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Johnson v. Rosemeyer*, 117 F.3d 104 (3d Cir. 1997).

A.     *Exhaustion/ Procedural Default*

A district court may only grant a habeas petition if the petitioner has exhausted all available state remedies as to each federal claim raised in the petition. 28 U.S.C. § 2254(b)(1)(A); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Slutzker v. Johnson*, 393 F.3d 373, 379 (3d Cir. 2004).  Exhaustion requires the petitioner "to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts ... by invoking one complete round of the state's established appellate review process," including petitioning for discretionary appeal.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-845 (1999); *Slutzker*, 393 F.3d at 380 (citing *Doctor v. Walters*, 96 F.3d 675, 681 (3d Cir. 1996)).  The burden is on the petitioner to establish that all available state remedies have been exhausted.  *Parker v. Kelchner*, 429 F.3d 58, 62 (3d Cir. 2005).

Exhaustion is excused for futility if "there is an absence of available State corrective process," for example when an appeal or petition for review would be procedurally barred as untimely, or "circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1)(B)(i)-(ii);

*Slutzker*, 393 F.3d at 380 (citing *Doctor*, 96 F.3d at 681).  However, if exhaustion

is futile because the petitioner failed to satisfy a state procedural requirement, then

the petitioner has procedurally defaulted and the exhaustion requirement is not

excused.  *Coleman*, 501 U.S. at 729-30; *Slutzker*, 393 F.3d at 380-81.  An

unexhausted claim which may no longer be raised in the state courts because of a

procedural bar, such as a prior waiver of the claim or the failure to raise the claim

in a timely petition, is considered to have been defaulted.  *Lambert v. Blackwell*,

134 F.3d 506, 518 (3d Cir. 1997).  Federal courts may not entertain habeas

petitions where the petitioner has procedurally defaulted because the procedural

default "rests on independent and adequate state procedural grounds."  *Coleman*,

501 U.S. at 729-30; *Slutzker*, 393 F.3d at 380-81.

Procedural default may be excused only if the petitioner "can demonstrate

cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 749-50; *Slutzker*, 393

F.3d at 380-81.  To establish "cause," a petitioner must "show that some objective

factor external to the defense impeded counsel's efforts to comply with the State's

procedural rule[s]."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Actual

prejudice requires a petitioner to establish that an error caused him "actual and

substantial disadvantage." *Murray*, 477 U.S. at 494 (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

B.    *Merits*

"The Antiterrorism and Effective Death Penalty Act of 1996  ('AEDPA') modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).  Specifically, when a federal-law issue has been adjudicated on the merits by a state court, the federal court reverses only when the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).[3]  *See*

---

[3]  Specifically, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*generally*, *Knowles v. Mirzayance*, 556 U.S. 111, 120-21 (2009); *Gattis v. Snyder*,

278 F.3d 222, 234 (3d Cir. 2002); *Moore v. Morton*, 255 F.3d 95, 104-05 (3d Cir.

2001). The Supreme Court has held that the "contrary to" and "unreasonable

application" clauses of § 2254(d)(1) have independent meaning. *Williams v.*

*Taylor*, 529 U.S. 362, 404-05 (2000). As explained in *Bell*:

> A federal habeas court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the governing law
> set forth in our cases, or if it decides a case differently than we have
> done on a set of materially indistinguishable facts. The court may
> grant relief under the "unreasonable application" clause if the state
> court correctly identifies the governing legal principle from our
> decisions but unreasonably applies it to the facts of the particular case.
> The focus of the latter inquiry is on whether the state court's
> application of clearly established federal law is objectively
> unreasonable....

*Bell*, 535 U.S. at 694 (citations omitted).

In a recent decision, *Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 176

L.Ed.2d 678 (2010), the United States Supreme Court, quoting *Williams*, explained

that "an *unreasonable* application of federal law is different from an *incorrect*

application of federal law." *Id.* at 773. Therefore, a federal court may not grant

habeas relief simply because it has concluded in its independent judgment that the

state court decision applied clearly established federal law erroneously or

incorrectly.[4] *Id.* Rather, the state court application must be objectively unreasonable. *Renico* added that this distinction creates a substantially higher threshold for obtaining relief under § 2254 and imposes a highly deferential standard for evaluating state court decisions. Simply put, "state-court decisions [must] be given the benefit of the doubt." *Id.* (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 784-85, 178 L.Ed.2d 624 (2011).

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. §

---

[4] "Whether the trial judge was right or wrong is not the pertinent question under AEDPA." *Renico*, 559 U.S. at 778 n. 3.

2254(e)(1).  This presumption of correctness applies to both explicit and implicit

findings of fact, and is only rebutted by clear and convincing evidence to the

contrary.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)

(stating that the clear and convincing standard in § 2254(e)(1) applies to factual

issues, whereas the unreasonable application standard of § 2254(d)(2) applies to

factual decisions); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## III.  DISCUSSION

### A.   Timeliness

A state prisoner requesting habeas corpus relief pursuant to 28 U.S.C. §

2254 must adhere to a statute of limitations that provides, in relevant part:

> (d)(1) A one-year period of limitations shall apply to an
> application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of - (A) the date
> on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking
> such review . . .
>
> (d)(2) The time during which a properly filed application
> for State post-conviction or other collateral review with
> respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation
> under this subsection.

28 U.S.C. § 2244(d)(1)-(2); *see generally, Jones v. Morton*, 195 F.3d. 153, 157 (3d

Cir. 1999).

The parties agree that West was required to file his habeas petition by November 13, 2012 in order to comply with 28 U.S.C. § 2254.  *See* (Doc. 6, p. 9; Doc. 11, p. 4, ¶ 26).  However, the parties disagree as to whether the instant habeas petition was timely filed.  Respondents contend that it is not entirely clear when the habeas petition was filed.  (Doc. 11, p. 5, ¶ 27).  A review of the documents in this case reveals that West signed the habeas petition on November 12, 2012, the envelope is postmarked November 15, 2012, and the Court received the petition on November 19, 2012.  *See* (Doc. 1).

"[P]ursuant to the prisoner mailbox rule, Appellant's *pro se* notice of appeal is deemed to be filed when it was handed to prison officials. . . ."  *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 n. 3 (Pa. Super. 2011), *appeal denied*, 30 A.3d 487 (Pa. 2011).  It is unclear when West handed his petition to prison officials.  Out of an abundance of caution, the Court will use the date the petition was signed by West, November 12, 2012, assume he handed the petition to prison officials on that date, and deem the petition timely filed.  *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988) (commenting that if there is a delay in a *pro se* prisoner's filing that he suspects is attributable to the prison authorities, he is unlikely to have any means of proving it; and holding that in light of a *pro se* prisoner's inability to control the prison's mail service, a document is deemed filed when he delivers it to

prison authorities).

   B.    *Claims Regarding the Trial Court Judge*

Michael T. Toole was a judge in the Luzerne County Court of Common Pleas and presided over West's underlying criminal case.  Subsequent to West's sentencing, former Judge Toole faced his own legal troubles and pled guilty to federal criminal charges.  *United States of America v. Michael T. Toole*, No. 3:09-cr-385 (M.D. Pa. 2009); (Doc. 11-3, pp. 29-36).  Former Judge Toole was sentenced to a thirty (30) month term of imprisonment and a three (3) year term of supervised release.  (*Id.*).

West claims that former Judge Toole's guilty plea, alleged substance abuse, and gambling problems somehow prejudiced him.  (Doc. 1, pp. 6-7, 11; Doc. 16, p. 9).  He states that former Judge Toole's alleged problems "made it fundamentally impossible for the trial court to have conducted a fair and impartial trial and in so doing has prejudiced Petitioner".  (Doc. 1, p. 11).  West further states that former Judge Toole's criminal conviction "was effectively in violation of his oath of office and therefore divested of associative judicial power/authority to have exercised the court's jurisdiction over West's person or the subject matter necessarily involved."  (Doc. 16, p. 9).

A review of this issue reveals that West has not exhausted his claims

12

regarding former Judge Toole.  West raised this issue in his petition for reargument

to the Pennsylvania Superior Court, which was denied by a per curiam opinion.

*Commonwealth of Pennsylvania v. West*, No. 255 MDA 2011 (Pa. Super. 2011);

(Doc. 11, p. 4, ¶¶ 17-21); (Doc. 12, pp. 9-10); (Doc. 16, pp. 5-6, ¶¶ 17-20).  West

raised similar arguments in his petition for allocatur to the Pennsylvania Supreme

Court, which was also denied by a per curiam opinion.  *Commonwealth of*

*Pennsylvania v. West*, No. 318 MAL 2012 (Pa. 2012); (Doc. 11, p. 4, ¶¶ 17-21);

(Doc. 12, pp. 9-10); (Doc. 16, pp. 5-6, ¶¶ 17-20).  The entire Supreme Court

Opinion states that "the Petition for Allowance of Appeal is DENIED."  *West*, 318

MAL 2012 (Order dated April 28, 2012).  As both petitions were denied without

opinions, this issue has never been presented to a court to consider on the merits

and is therefore unexhausted.  *See Marra v. Larkins*, 46 Fed. Appx. 83, 93 (3d Cir.

1996) (the denial of allocatur is not itself a decision on the merits); *Commonwealth*

*v. Davis*, 546 Pa. 158, 683 A.2d 873 (Pa. 1996) (denial of review does not

constitute a ruling on the merits).  As such, West has failed to exhaust his state

court remedies with respect to this claim.[5]

---

[5]  In the addendum to the PCRA petition, West stated that former Judge Toole's
negotiation of his own plea agreement caused him to delay scheduling West's PCRA hearing.
(Doc. 11-3, p. 20).  To the extent that West is claiming delay in scheduling his PCRA hearing,
such claim is not an appropriate ground for granting habeas review.  Habeas relief can be granted
only based upon the proceedings that actually resulted in West's conviction, not upon
circumstances that occurred during the state post-conviction proceedings.  *See Hassine v.*

Moreover, on July 23, 2013, Magistrate Judge Martin C. Carlson issued a Memorandum and Order in the instant case denying West's motion for discovery relating to former Judge Toole's federal conviction, finding that the claim was unexhausted. (Doc. 20). Magistrate Judge Carlson stated, "while West seeks this discovery, it is evident from the Commonwealth's response to his petition for writ of habeas corpus (Doc. 11) that West has never exhausted his state remedies with respect to this claim. Thus, West seeks discovery in support of an unexhausted claim which he cannot pursue in federal court at this time." (Doc. 20, pp. 1-2).

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" 28 U.S.C. § 2254(b); *see also*, *Werts v. Vaughn*, 228 F.2d 178, 192 (3d Cir. 2000). It must be clear from existing state law and state court decisions that an avenue is foreclosed before exhaustion will be excused. *Lines v. Larkins*, 208 F.3d 153, 163 (2000). "In such cases applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes

---

*Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998). Therefore, claims premised upon delay or other problems encountered while seeking state collateral relief are inappropriate grounds for granting habeas review. *See id.*

14

'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991)." *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *see also*, *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001); *Keller v. Larkins*, 251 F.3d 408, 415 (3d Cir.) *cert. denied*, 122 S.Ct. 396 (2001); *Lines*, 208 F.3d at 164-66.

In view of the passage of time since West's conviction became final, it does not appear as though he could pursue any state court remedies at this time. *See Lines*, 208 F.3d at 163. That is, any relief that may have been available to him under the PCRA is now foreclosed by its one-year statute of limitations, and West's claim does not satisfy any of the three § 9545 exceptions. *See* 42 Pa.C.S. § 9545.[6] West states that "such discovery of new evidence excuses the late stage of

---

[6] Pennsylvania prisoners must file their initial and subsequent PCRA petitions:

(1)   [W]ithin one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:

  (i)   the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;

  (ii)   the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

  (iii)   the right asserted is a constitutional right that was recognized by the Supreme Court of the United

collateral review." (Doc. 16, p. 8). However, in the addendum to his PCRA, West acknowledged that he was aware of former Judge Toole's pending criminal charges, but he failed to set forth his instant claim that former Judge Toole's guilty plea, substance abuse, and gambling problems prejudiced him at trial. *See* (Doc. 11-3, p. 20). Rather, the addendum to the PCRA petition alleged prejudice at the PCRA stage. *See* (*Id.*). West has failed to allege cause or prejudice. Nor has he demonstrated that a lack of review by the Court will constitute a fundamental miscarriage of justice.

### C.     Ineffective Assistance of Counsel

In *Strickland v. Washington*, 466 U.S. 668, 688 (1984), the United States Supreme Court held that to prove a constitutional violation for ineffective assistance of counsel, a habeas petitioner must meet a two-pronged test. The petitioner must show "that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Id*. at 687; *Deputy v. Taylor*, 19 F.3d 1485, 1493 (3d Cir. 1994).

---

States or the Supreme Court of Pennsylvania after the time provided in this section and has been held by that court to apply retroactively.

(2)     Any petition invoking an exception provided in paragraph (1) shall be filed within 60 days of the date the claim could have been presented.

42 Pa.C.S. § 9545(b).

To demonstrate deficient performance, a petitioner must show that "counsel's performance fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688; *Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001).  A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689; *Jermyn*, 266 F.3d at 282; *Berryman v. Morton*, 100 F.3d 1089, 1094 (3d Cir. 1996).  If, under the circumstances, counsel's actions might be considered sound trial strategy, the presumption is not rebutted, *Strickland*, 466 U.S. at 689, because "substantial deference is to be accorded counsel's tactical decisions." *United States v. Wiener*, 127 F. Supp. 2d 645, 648 (M.D. Pa. 2001).  A decision supported by "reasonable professional judgment" does not constitute ineffective assistance of counsel.  *Burger v. Kemp*, 483 U.S. 776, 794 (1987).  Further, counsel cannot be deemed ineffective for not pursuing a meritless claim.  *Hartey v. Vaughn*, 186 F.3d 367, 372 (3d Cir. 1999).

A petitioner satisfies the second prong and shows prejudice when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992).  "Without proof of both

deficient performance and prejudice to the defense ... it could not be said that the

sentence or conviction resulted from a breakdown in the adversary process that

rendered the result of the proceeding unreliable, and the sentence or conviction

should stand." *Bell*, 535 U.S. at 695 (internal quotations and citation omitted).  In

assessing whether the result of the proceeding might have been different, a

reviewing court must consider the "totality of the evidence before the judge or

jury." *Strickland*, 466 U.S. at 695; *Jermyn*, 266 F.3d at 283.  However, "a court

can choose to address the prejudice prong before the ineffectiveness prong and

reject an ineffectiveness claim solely on the ground that the defendant was not

prejudiced." *Rolan v. Vaughn*, 445 F.3d 671, 678 (3d Cir. 2006).

At the time the state court reviewed the claims raised by West, *Strickland's*

familiar two-pronged test was the "clearly established federal law" applicable to

ineffective assistance of counsel claims.  Under Pennsylvania state jurisprudence, a

three-prong test is applied to ineffective assistance of counsel claims, but is, in

substance, identical to the *Strickland* test.  *See Commonwealth v. Pierce*, 515 Pa.

153, 527 A.2d 973, 975-77 (Pa. 1987).  The Third Circuit Court of Appeals has

held that Pennsylvania's test for assessing ineffective assistance of counsel claims

is not contrary to *Strickland*.  *Jacobs v. Horn*, 395 F.3d 92, 107 n. 9 (3d Cir. 2005);

*Werts*, 228 F.3d at 204.  Thus, under § 2254(d)(1), the relevant inquiry in

addressing an ineffectiveness claim that has been adjudicated on the merits is whether the Pennsylvania court's decision involved an unreasonable application of *Strickland*.  *Jacobs*, 395 F.3d at 107 n .9; *Werts*, 228 F.3d at 204.

In evaluating whether counsel's performance was deficient, this Court must defer to counsel's tactical decisions, avoid the distorting effects of hindsight and give counsel the benefit of a strong presumption of reasonableness.  *Strickland*, 466 U.S. at 689.  In his habeas petition, West sets forth several claims of ineffective assistance of trial counsel.  (Doc. 1; Doc. 6).  West states that "but for counsel's over-all ineffective assistance rendered the outcome at trial would have been different requiring the grant of federal habeas corpus relief."  (Doc. 1, p. 20).

The PCRA court specifically considered West's arguments that trial counsel was ineffective for failing to: (1) properly impeach the victims with their inconsistent statements during cross-examination; (2) present evidence about the victims' mother; (3) introduce evidence of West's good character or reputation; (4) retain expert witnesses; (5) ensure that West underwent an independent medical or physiological evaluation; (6) adequately prepare for and represent West during the sentencing/SVP hearing; (7) object to a Children and Youth Services representative "coaching" the victims on the witness stand; (8) voir dire certain jurors; (9) obtain a bill of particulars; and, (10) set forth an alibi defense.  (*Id*.); (Doc. 6-1, pp. 3-25;

19

Doc. 6-2, pp. 1-25; Doc. 6-3, pp. 1-24).

As stated above, the PCRA court denied West's petition.  On appeal, the Pennsylvania Superior Court affirmed the PCRA court's order denying relief, determined that West's ineffectiveness claims were meritless, and that trial counsel had a reasonable strategic basis for his decisions.  (Doc.11-1, p. 7) (citing PCRA court order and opinion, 12/30/10, pp 7-18).  The Superior Court reviewed the entire record and determined that "[w]hile [West's] brief raises a litany of ineffectiveness claims, it fails, in large part, to demonstrate that Attorney Urbanski's purported ineffectiveness 'so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.'"  (Doc. 11-1, p. 7) (citing 42 Pa.C.S.A. § 9543(a)(2)(ii)).  The Superior Court therefore affirmed the PCRA court's order and relied on the "thorough, well-reasoned" opinion of the PCRA court.  (Doc. 11-1, pp. 7-8).  In addressing West's ineffectiveness claim, the Court will consider the entirety of the PCRA court's opinion that was relied on by the Superior Court.

### 1.     Prior Inconsistent Statements

West claims that trial counsel was ineffective for failing to properly impeach the victims with their inconsistent statements during cross-examination. Respondents argue that a witness cannot be impeached with the statement of

another witness, and trial counsel was not ineffective for failing to pursue such line of questioning.  (Doc. 12, pp. 10-11) (citing *Commonwealth v. Baez*, 431 A.2d 909, 912 (Pa. 1981) ("[I]t is axiomatic that when attempting to discredit a witness' testimony by means of a prior inconsistent statement, the statement must have been made or adopted by the witness whose credibility is being impeached.")).

The PCRA court initially determined that Petitioner made several sweeping allegations regarding trial counsel's alleged ineffectiveness for failing to impeach witnesses for various reasons, and that Petitioner failed to adequately articulate this claim of ineffectiveness in accordance with *Strickland* and *Pierce*.  (Doc. 11-2, p. 13).  The PCRA court stated:

> It is not this Court's inclination, responsibility or prerogative to attempt to decipher fragmented arguments presented in shotgun fashion within the three separate and distinct prongs of *Strickland/Pierce*.
>
> For example, [West's] post hearing submission identified asserted inconsistencies in the clinical notes of Dr. Gary Lawrence during his examination of both alleged victims.  That the victims were not cross-examined regarding the statements to Dr. Lawrence is accurate, however, Dr. Lawrence, was in fact, extensively cross-examined by trial counsel concerning the alleged inconsistencies.  (Trial Transcript N.T. 115-120).  Moreover, even a cursory examination of Mr. Urbanski's closing argument reveals a repeated theme suggesting that inconsistencies brought forth during trial evidence a lack of credibility on the victims' part.  Indeed, at page 8 of the closing transcript, Mr. Urbanski utilizes the cross-examination of Dr. Lawrence regarding the victims' statements to demonstrate they gave a different "story" to Dr.

Lawrence than they did at the preliminary hearing which both differed from their trial testimony.  [West] fails to explain within the *Strickland/Pierce* context how counsel was ineffective in this regard. Mr. West has failed to demonstrate the alleged victims' credibility would have been undermined to a materially greater degree had the complained of questions been posed.  Simply stated [West] has not established that additional impeachment would have changed the outcome of the trial.  While another lawyer may have pursued a different course, equally or perhaps more logical, this does not establish counsel's ineffectiveness.

[West] next suggests that trial counsel never cross-examined one of the victims regarding a statement contained in Exhibit No. 7 similarly fails as the context of that document plainly reveals the complainant is the alleged victims' mother, Christy Kipa, and the officer is asking Ms. Kipa whether Jessica had been touched by the suspect.  The response "She stated she had not" is unclear both contextually and temporally.  It was not developed [at] the PCRA hearing either through the testimony of the law enforcement officer or Ms. Kipa.  A common sense reading would allow a conclusion that at the time of the statement Jessica had not told her mother of the Defendant's conduct.  In any event, [West] fails to argue counsel's ineffectiveness within the required three-prong *Strickland/Pierce* test. Moreover, Mr. Urbanski's repeated explanation as to why he cross-examined the victims' regarding certain inconsistencies and not others is reasonable.

...

We are not aware of and [West's] Counsel has not identified any case in this Commonwealth holding that trial counsel's failure to ask every available impeachment question dictates the conclusion of ineffective assistance. ...  Similarly, we decline to deem trial counsel ineffective because the jury resolved the issue of credibility in favor of the children and against this Defendant.

(Doc. 11-2, pp. 13-14, 16).

The state courts' basis for finding that trial counsel was not ineffective for

failing to ask every possible impeachment question cannot be said to be

unreasonable based upon the record.  This Court is mindful of the statement in

*Strickland* that "[j]udicial scrutiny of counsel's performance must be highly

deferential.  It is all too tempting for a defendant to second-guess counsel's

assistance after conviction or adverse sentence, and it is all too easy for a court,

examining counsel's defense after it has proved unsuccessful, to conclude that a

particular act or omission of counsel was unreasonable."  *Strickland*, 466 U.S. at

689; *cf. Engle v. Isaac*, 456 U.S. 107, 133-34 (1982).  In this instance, it is clear

that the state court determination that trial counsel was not ineffective in his cross-

examination of the victims, was consistent with *Strickland* and was based on a

reasonable determination of the facts in light of the evidence presented.  Thus,

West is not entitled to relief on this claim.

### 2.    *Failure to Present Evidence about the Victims' Mother*

West next argues that trial counsel was ineffective for failing to present

evidence about the victims' mother, specifically evidence that she previously had

an abortion.  (Doc. 11-2, p. 19).  Petitioner claims that the victims' mother was

impregnated by another man, tried to convince West that he was the father, had an

abortion, and then told the father of the child that she had a miscarriage.  (Doc. 11-

4, June 12, 2006 N.T. 93).  The PCRA court summarized the trial court transcript

on this issue as follows:

> [West's] argument that trial counsel was ineffective for failing to "bring forth the evidence that the mother had gotten pregnant from another man and tried to convince Defendant that it was his, had an abortion and then told the father of the child that she miscarried" is simply inaccurate. Trial counsel attempted to cross-examine Ms. Kipa about the abortion in the context of a lawsuit that was filed soon after the breakup. (June 12, 2006 N.T. 93). Questioning concerning an abortion was met with an immediate objection at which time the trial court directed counsel to sidebar and, in part, stated "I'll let you go with the allegations. I don't know what relevance they have. If you want to explore that they were contentious but assumes that proof of any of the facts, especially the judgment, touch on it and move forward quickly." (Doc. 11-2, p. 19) (citing June 12, 2006 N.T. 95). Afterwards Mr. Urbanski specifically asked the witness whether there was a contention in the lawsuit that Mr. West had paid for an abortion and whether or not the witness denied same. (June 12, 2006 N.T. 96). That Ms. Kipa allegedly attempted to convince the Defendant that he was the father is, in [our] judgment, both collateral and prohibited by *Minich*.

(Doc. 11-2, p. 19) (footnote omitted).

In *Commonwealth v. Minich*, 4 A.3d 1063 (Pa. Super. 2010), the Pennsylvania Superior Court concluded that a pertinent character trait for purposes of Pennsylvania Rule of Evidence 404(a)(2) is limited to a character trait of the victim that is relevant to the crime or defense at issue in the case. *See* (Doc. 11-2, pp. 12-13).

The state courts' decision regarding the testimony permitted pursuant to the Pennsylvania Rules of Evidence concerns purely a state law issue that is not

24

reviewable by a federal habeas court.  *Estelle*, 502 U.S. at 67-68.  However, this

Court finds that the state courts' decision that trial counsel could not be found

ineffective for acting in accordance with the Pennsylvania Rules of Evidence was

based on a reasonable determination of the facts in light of the evidence presented.

### 3.     *Failure to Call Character Witnesses*

West claims that trial counsel was ineffective for failing to call character

witnesses on his behalf in order to establish his reputation in the community.  (Doc.

11-2, p. 9).

To claim ineffectiveness for failure to call a witness under Pennsylvania law,

an appellant must establish that: (1) the witness existed; (2) the witness was

available; (3) counsel was informed of the existence of the witness, or counsel

should otherwise have known him; (4) the witness was prepared to cooperate and

testify for Appellant at trial; and (5) the absence of the testimony prejudiced

Appellant so as to deny him a fair trial.  *Commonwealth v. Todd*, 820 A.2d 707,

712 (Pa. Super. 2003).

The PCRA court determined that the testimony identified by West was not

character evidence as defined by Pennsylvania law.  (Doc. 11-2, p. 13).  The court

also stated that the character trait of "truthfulness and veracity" was not relevant

and was inadmissable.  (Doc. 11-2, p. 9).  The PCRA court summarized the offered

testimony as follows:

> [West] offered the testimony of Stephen Davidovich (July 1, 2010 N.T. 5-12). In describing Defendant's "character" this witness indicated, in part, "For as long as I know him, I've never seen him to do or be anything like that. He's one of the best guys I've ever met. We're close personal friends. I've been over his house numerous times. He's been over my house numerous times." (July 1, 2010 N.T. 6). Mr. Davidovich additionally indicated he would have been able to testify regarding "Ms. Kipa's characteristics in the relationship."

> On cross-examination, this witness stated Defendant's reputation is impeccable since he was a supervisor at their place of employment and "His intelligence is there. He runs the plant. He keeps everybody safe. His reputation is good." (July 1, 2010 N.T. 10).

> Steven Link was not available to testify at the PCRA hearing as it was represented he has a serious medical illness. (July 1, 2010 N.T. 8). Mr. Link's "statement of testimony" attached to the original PCRA petition provides nothing regarding the Defendant's reputation in the community concerning a specific character trait.

> Carl Smith, who testified during Petitioner's trial, was called during the PCRA hearing and stated he was aware that part of the allegations against Mr. West concerned showing the victims "cartoon porn". (July 1, 2010 N.T. 18). Mr. Smith stated he saw e-mails from the victim's mother, Christy Kipa, containing this "cartoon character porn". (July 1, 2010 N.T. 19). Additionally, this witness stated he overheard a cell phone conversation in which Christy Kipa stated she was going to "f up [West's] life". (July 1, 2010 N.T. 20). Finally, this witness indicated he was present at the Defendant's home almost everyday during a two to three week period when the victims' mother was working in Texas as a hunting trip was cancelled. (July 1, 2010 N.T. 22).

> On cross-examination the Assistant District Attorney pointed out that Mr. Smith was questioned during trial by Mr. Urbanski regarding his

presence at the Defendant's home during the time frame in which Ms. Kipa was in Texas.  (July 1, 2010 N.T. 27-29).  This witness offered no testimony concerning Mr. West's reputation in the community regarding a relevant character trait.

Jason Derr was called and stated that during Christy Kipa's trip to Texas he stayed at Defendant's home "A lot of nights...".  (July 1, 2010 N.T. 33).  Mr. Derr indicated he would sleep downstairs in the living room and Defendant would sleep on the same couch.  (July 1, 2010 N.T. 34).  Mr. Derr also stated he was aware of an incident where one of the victims "stole" money from the home and attempted to blame one of Mr. West's sons -- Jake.  (July 1, 2010 N.T. 35).

On cross-examination, Mr. Derr stated that during Ms. Kipa's trip to Texas, the Defendant's "secret" girlfriend Bonita "Bonnie" Sue Meza "popped in" to the West residence "twice".  (July 1, 2010 N.T. 41).  Upon further cross-examination when confronted with Ms. Meza's trial testimony that she would arrive at the West residence at approximately 9:30 or 10 and leave at approximately 5:30 a.m.  Mr. Derr stated "Well, I knew about two nights, and, I guess, like I said, that's all I know".  (July 1, 2010 N.T. 42).

In considering character testimony evidence of good character offered by a defendant in a criminal prosecution must be limited to the Defendant's general reputation for the particular trait or traits of character involved in the commission of the crime charged.  *Commonwealth v. Lauro*, 819 A.2d 100, 109 (Pa. Super. 2003).  As *Lauro* makes clear such evidence must relate to a period at or about the time the offense was committed and must be established by testimony of witnesses as to the community opinion of the individual in question, not specific acts or mere rumor.  In a rape case, evidence of the character of the defendant would be limited to presentation of testimony concerning his general reputation in the community with regard to such traits as nonviolence, good moral character and chastity.  *Id.* 819 A.2d at 109 *citing Commonwealth v. Luther*, 463 A.2d 1073, 1078 (Pa. Super. 1983).  The *Lauro* Court rejected defendant's proposed testimony from two individuals who would have

> testified that they knew the defendant, that he was reliable and trustworthy and that the defendant conducted himself with integrity and honesty and that the defendant's children appeared to have a normal relationship.  [The] Superior Court concluded that testimony would have been inadmissible as character evidence and therefore counsel's failure to call the witnesses was not ineffective assistance.

(Doc. 11-2, pp. 9-11).  The PCRA court ultimately determined that "the identified testimony either is not character evidence as that term is understood in Pennsylvania jurisprudence or, runs afoul of the aforementioned appellate holdings."  (Doc. 11-2, p. 13).

Given the foregoing facts of record, the state courts reasonably determined that trial counsel had a reasonable basis for not calling these witnesses. Consequently, it cannot be found that counsel's decision was so unreasonable that no competent counsel would have chosen it.  *See Bond v. Beard*, 539 F.3d 256, 285 (3d Cir. 2008) (explaining that counsel's performance is measured against the standard of "reasonably effective assistance" as defined by "prevailing professional norms").  Because West cannot demonstrate prejudice as a result of counsel's inaction, that is, that the outcome of his case would have been different as a result of counsel's failure to present the testimony of these witnesses, West's ineffective assistance of counsel claim fails.  *See Strickland*, 466 U.S. at 697 (holding that an ineffective assistance claim will be dismissed if the petitioner makes an insufficient

showing under either the performance or prejudice prongs); *McAleese v.*

*Mazurkiewicz*, 1 F.3d 159, 170-71 (3d Cir. 1993) (determining that the court is not

required to address the issue of counsel's performance if it determines that no

prejudice resulted from counsel's conduct).   Further, counsel's decision not to call

character witnesses should "be considered sound trial strategy," *Strickland*, 466

U.S. at 689, and is entitled to great deference.   West has not demonstrated that

counsel was ineffective in his failure to call these witnesses in view of the

testimony the witnesses would have provided.   Thus, West's claim is without

merit.

### 4.     Failure to Retain Experts

West next claims that trial counsel was ineffective for failing to retain

experts to examine himself and the victims.   At the October 6, 2010 PCRA hearing,

West testified that he believed medical experts would be necessary, but failed to

present any evidence supporting this belief.   (Doc. 11-4, October 6, 2010 PCRA

Hearing, N.T. 62-66).   West answered questioned on cross-examination by the

prosecution as follows:

> Q:     So you're not claiming that you have any psychological
>        disability or problem that prevented you from being able to go
>        to trial; is that correct?
> A:     No.
> Q:     Okay.   And you're not claiming that in some way there is some

> kind of physical evidence that would have exculpitated [sic]
> you in this case; is that correct?
>
> A:    No.
>
> ...
>
> Q:    ... Just so I'm clear, my question to you is, in what specific way
> are you saying that a physical examination on the girls by one
> of your experts would have benefit[t]ed you at trial?
>
> A:    I don't know.  I'm not a doctor.

(Doc. 11-4, October 6, 2010 PCRA Hearing, N.T. 63-65).

The PCRA court examined West's claim that trial counsel was ineffective

for failing to retain experts and explained that:

> [T]he record is absolutely devoid of any development of this claim
> other than Mr. West's statements during the PCRA hearing that he
> thought they would be necessary.  It is not enough to simply assert or
> represent the failure to secure expert testimony was ineffective, it
> must be demonstrated in the record.  A medical and/or psychiatric
> examination of an alleged victim or Commonwealth witness is not
> conducted at the whim or caprice of a defendant or defendant's
> counsel.  They represent an extraordinary request and are granted, in
> this Court's experience, rarely.  We reiterate there is nothing in this
> record which would even approach the threshold required for such
> examinations.  No expert testimony was identified or presented at the
> PCRA hearing which would trigger any *Strickland/ Pierce* analysis.
> This is the petitioner's burden.  Additionally, Dr. Lawrence
> acknowledged during Mr. Urbanski's cross-examination that the
> alleged victims exhibited no medical evidence of sexual abuse.

(Doc. 11-2, pp. 17-18) (citing *Commonwealth v. Boich*, 982 A.2d 102, 110, 111

(Pa. Super. 2009); *Commonwealth v. K.M.*, 680 A.2d 1168, 1172 (Pa. Super.

1996)).

Trial counsel made the decision not to secure the testimony of medical experts.  The state courts reasonably determined that trial counsel had a reasonable basis for not calling medical experts and counsel's decision was not unreasonable.  *See Bond*, 539 F.3d 256.  West cannot demonstrate prejudice as a result of counsel's inaction and he cannot demonstrate that the outcome of his case would have been different if medical experts testified at trial.  Accordingly, this ineffective assistance of counsel claim fails.  *See Strickland*, 466 U.S. at 697; *McAleese*, 1 F.3d 159.

5.   <em>Trial Counsel's Representation During Sentencing</em>

West argues that trial counsel was ineffective in his representation during the sentencing hearing.  The PCRA court reviewed the October 3, 2006 sentencing/SVP proceeding and determined that counsel was not ineffective in his representation of West.  (Doc. 11-2).  The PCRA court outlined trial counsel's explanation of the sentencing strategy as follows:

Mr. Urbanski:

Mr. West professed his innocence throughout this matter.  So my strategy for his sentencing was to sort of make it as simple as possible and not get into a retrial of the case.

Judge Toole, who was the trial judge in the case, had sat through the case.  I believe it lasted a few days.  He was very familiar with the testimony.  He was very familiar with my client's position.  I did not

want to turn a sentencing hearing into a circus and another trial where
all -- all I think that would do is put the judge in a position where he
may actually increase the sentence he was going to give because
feeling that, you know, the judge had sat through the trial.

I believe most judges believe strongly in the jury system, and that
when the jury comes back with a guilty verdict, the jury has spoken.
When the jury comes back with a not guilty verdict, the jury [has]
spoken.  This jury came back with a guilty verdict.

For Mr. West or I to retry the case at sentencing, I think that's just
very detrimental.  It was best to come in and just have Mr. West say,
I'm innocent of this, but not retry the case.  So that the judge, you
know, at that point said, okay, I'm going to sentence you in the
standard range and not take it out -- I think that's just human nature if,
you know, you sort of protest too much, that that would be detrimental
to a defendant at sentencing.

(Doc. 11-2, p. 8).  The PCRA court ultimately determined that trial counsel's

explanation of the sentencing strategy was "certainly not unreasonable."  (Doc. 11-

2, p. 8).

Here, consistent with *Strickland*, it was adequately demonstrated that trial

counsel was not deficient in his representation during sentencing.  He made no

"errors so serious" so as to cease functioning as adequate counsel under *Strickland*.

The state courts' analyses are cogent and entirely consistent with federal standards.

Accordingly, West is not entitled to relief on this claim.

### 6.    *Children and Youth Services Representative*

West claims that a representative from Children and Youth Services was in

32

the back of the courtroom during trial "coaching" the victims on the witness stand.

He claims that the representative was shaking her head, indicating how the girls

should answer the questions.  The PCRA court found that this allegation was

"absolutely unsupported in the record."  (Doc. 11-2, p. 20).

Pursuant to Pennsylvania law, arguments that are undeveloped and lack

citation to relevant authority are waived.  *See Commonwealth v. Briggs*, 608 Pa.

430, 12 A.3d 291, 341 (Pa. 2011) ("as [Appellant's] claim is utterly undeveloped,

it is waived for purposes of ... appeal"), *cert. denied*, 132 S.Ct. 267 (2011).

Accordingly, this claim was waived under state law and, as a result, is procedurally

defaulted in this forum.  West must therefore show cause and prejudice or a

fundamental miscarriage of justice in order for this Court to review this claim.

West offered no explanation to excuse his default.  This Court finds that the state

courts made a reasonable application of a well-established state rule of procedure

and that rule provided an independent and adequate ground for its decision.  West

has procedurally defaulted this claim and federal review is unavailable.  *See*

*Coleman*, 501 U.S. at 750.

### 7.     *Juror Issues*

West next argues that trial counsel was ineffective for failing to question,

and move to strike, certain jurors.  The PCRA court determined that this claim was

undeveloped and was "clearly not analyzed ... within the *Strickland/Pierce* test framework." (Doc. 11-2, p. 20).

West also claims that a medical expert and the victims' grandmother were speaking with the jurors, he was prejudiced by this contact, and the jurors should have been removed. (Doc. 6-2, pp. 20-21). The PCRA court found that this claim failed and "[t]he disposition sheet of June 15, 2006, offered in support of this allegation established absolutely nothing warranting the conclusion that trial counsel was ineffective." (Doc. 11-2, p. 20).

The state courts again determined that this claim was waived under state law. (Doc. 11-2, p. 20). *See Briggs*, 12 A.3d 291. Therefore, West's claim regarding trial counsel's failure to strike certain jurors is procedurally defaulted in this forum. West must show cause and prejudice or a fundamental miscarriage of justice in order for this Court to review this claim. West has failed to do so. As such, federal review of this claim is unavailable. *See Coleman*, 501 U.S. at 750.

### 8.   Bill of Particulars

Next, West argues that trial counsel was ineffective for failing to obtain a bill of particulars from the prosecution. The PCRA court dismissed this claim and determined that it was undeveloped and not analyzed pursuant to *Strickland/Pierce*. (Doc. 11-2, p. 20). As discussed in the previous two (2)

sections, because this claim was waived under state law, it is procedurally

defaulted in this forum.  West has failed to show cause and prejudice or a

fundamental miscarriage of justice in order for this Court to review this claim.  The

state courts made a reasonable application of a state rule of procedure.

Accordingly, federal review of this claim is unavailable.  *See Coleman*, 501 U.S. at

750.

        9.     *Alibi Defense*

Lastly, West claims that he presented the possibility of an alibi defense to

trial counsel, and counsel failed to advance this theory.  (Doc. 6-1, pp. 12-18).  He

appears to argue that he was never alone with the victims and therefore could not

have committed the criminal acts.  (Doc. 6-1, pp. 14-15).  West contends that the

testimony of defense witnesses Bonita Mesa, Carl Smith, Jason Derr, and Christine

West would establish that they were periodically in the West home and he

therefore was not alone with the victims.  (Doc. 6-1, pp. 13-14); (Doc. 11-4, June

12, 2006, N.T. 173-182; July 1, 2010, N.T. 32-74).  At the PCRA hearing, these

witnesses testified that they spent time at the West home, however they were not at

the home nonstop.  (*Id.*).

Although not explicitly labeled as an alibi defense in the state courts, the

PCRA court addressed West's claim that there were other individuals in the home

at the time the offenses were committed.  At the October 26, 2010 PCRA hearing,

Attorney Urbanski testified that he and West discussed presenting witnesses that

were present during the time the incidents occurred.  (Doc. 11-4, October 26, 2010,

N.T. 11).  Attorney Urbanski testified as follows:

> Q:  And do you recall discussing with the Defendant what defense
>     witnesses would be called to trial?
>
> A:  Yes, we did.  And we again tried to put together a timetable
>     where -- to show that during the majority of these times, that
>     Mr. West was not alone in the house besides the children; that
>     there were other people there.
>     If I remember correctly, he had some friends who stayed over
>     and some friends who spent a lot of time with him.  It made it
>     particularly difficult because of the fact that there weren't --
>     again, *there weren't specific dates and times that this occurred*.
>     It was sort of a window of when this occurred.  And we tried to
>     put together witnesses who were there to at least establish that
>     during the time that they were there, that nothing unusual went
>     on.

(Doc. 11-4, October 26, 2010, N.T. 11) (emphasis added).

West also claims that trial counsel was ineffective for failing to cross-

examine the victims' mother as to her whereabouts during the incidents.  (Doc. 11-

3, p. 81).  In its opinion, the PCRA court addressed this claim and stated that, at

trial, "each alleged victim was asked where their mother was when these offenses

were repeatedly committed and their respective responses were 'she would be at

work or down in Texas doing work' and 'my mom was at work and the kids were

either in a different room or outside.'" (Doc. 11-2, p. 17). However, this line of

questioning was in the context of establishing inconsistent statements, not

necessarily to prove an alibi defense. (Doc. 11-2, p. 17). Even if West's trial

counsel had couched this claim in the terms of an alibi defense, the claim

nevertheless has no merit.

The state courts' resolution of this claim did not involve an unreasonable

application of the governing federal law. At the PCRA hearing, defense witnesses

testified that they regularly spent time in the West home. *See* (Doc. 11-4, June 12,

2006, N.T. 173-182; July 1, 2010, N.T. 32-74). At no time, however, did the

witnesses testify that they were physically present in the West residence on the

specific day and time that the victims were assaulted, and they did not testify that

they were continually in the home. *See* (*Id.*)

Although the proffered testimony of the defense witnesses might

conceivably be construed as potentially helpful to West's case insofar as it would

identify for the jury that other individuals were in the residence, its inclusion at

trial would not have produced a reasonable probability of a different outcome.

Even if the jury had heard the testimony of these witnesses in full, it still could

have rationally concluded, based on the evidence of record, that West committed

the crimes. As such, the state courts' decision reasonably applied the law

established in *Strickland*, and thus, West's ineffectiveness assistance of counsel on this claim is without merit.

### D.   *Delay in Deciding the PCRA Petition*

West also claims that he was prejudiced by the delay in deciding his PCRA petition.  (Doc. 6, pp. 13-14; Doc. 11-3, pp. 20-21).  The PCRA court considered West's claim that the delay in his PCRA petition was due to former Judge Toole's negotiations with the United States Attorney's Office and the arrest of a judge subsequently assigned to hear West's case.  (Doc. 11-2, p. 6 n. 3).  The PCRA court noted that West argued "the sheer length of delay is prejudice 'per se.'"  (*Id.*).  The PCRA court determined that "[n]o authority is cited for this proposition and given our disposition of the petition we decline counsel's invitation to conclude 'per se' prejudice."  (*Id.*).

The Superior Court also addressed this issue as follows:

> [West] also contends he was prejudiced by the PCRA court's delay in deciding his PCRA petition, and sets forth no less than five additional errors in his appellate brief that were purportedly made by the PCRA court.  *See* Appellant's Brief at 36-37.  This Court has long recognized that "[i]n order to be entitled to PCRA relief, a petitioner must plead and prove, *inter alia*, that the allegation of error has not been ... waived." *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005), *appeal denied*, 917 A.2d 844 (Pa. 2007).  Herein, our review indicates that [West] failed to adequately develop these contentions in his appellate brief.  Thus, we conclude that [West's] claims are not reviewable.  *See Commonwealth v. Briggs*, 12 A.3d 291, 341 (Pa.

2011) (holding that arguments which are undeveloped and lack
citation to relevant authority are waived).

(Doc. 11-1, p. 8, n. 4).

This Court concludes that the Superior Court made a reasonable application

of a well-established state rule of procedure and that rule provided an independent

and adequate ground for its decision.  This claim was waived under state law and is

therefore  procedurally defaulted in this forum.  West has failed to show cause and

prejudice or a fundamental miscarriage of justice in order to excuse his procedural

default.  As such, federal review of this claim is unavailable.  *See Coleman*, 501

U.S. at 750.

In addition, as stated *supra*, note 5, habeas relief can be granted only based

upon the proceedings that actually resulted in West's conviction, not upon

circumstances that occurred during the state post-conviction proceedings.  *See*

*Hassine*, 160 F.3d at 954.  Therefore, West's claim premised upon delay in

deciding his PCRA petition is an inappropriate ground for granting habeas review.

*See id.*

Respondents note that West also set forth various additional claims of errors

by the PCRA court, and that such "laundry list" of alleged errors results in a waiver

of these claims and "[s]imply asking rhetorical questions is not analysis or

argument supporting that position." (Doc. 12, p. 14). To the extent that any of these claims have not been procedurally defaulted, the Court notes that West has also not properly presented these claims to the Court. Bald assertions and conclusory allegations do not afford a sufficient ground to provide habeas relief. *See Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987). West's failure to sufficiently identify the facts upon which these alleged errors are based precludes habeas relief. *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 n. 12 (3d. Cir. 1991).

E.     *Motion for Appointment of Counsel*

Recently, West filed motions to appoint counsel. (Docs. 25-28). Although prisoners have no constitutional or statutory rights to appointment of counsel in federal habeas corpus proceedings, *Coleman*, 501 U.S. at 752, the Court has broad discretionary power to appoint counsel to a financially eligible habeas petitioner if "the interests of justice so require. . ." *See* 18 U.S.C. § 3006A(a)(2); *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). The United States Court of Appeals for the Third Circuit has stated that appointment of counsel for an indigent litigant should be made when circumstances indicate "the likelihood of substantial prejudice to him resulting, for example, from his probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case."

*Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984).  The initial determination to

be made by the Court in evaluating the expenditure of the "precious commodity"

of volunteer counsel is whether the petitioner's case has some arguable merit in

fact and law.  *Montgomery*, 294 F.3d at 499.  If a petitioner overcomes this

threshold hurdle, other factors to be examined are:

    (1)    the claimant's ability to present his or her own case;

    (2)    the difficulty of the particular legal issues;

    (3)    the degree to which factual investigation will be necessary and the ability of the claimant to pursue investigation;

    (4)    the claimant's capacity to retain counsel on his or her own behalf;

    (5)    the extent to which the case is likely to turn on credibility determinations; and

    (6)    whether the case will require testimony from expert witnesses.

*Montgomery*, 294 F.3d at 499 (citing *Tabron*, 6 F.3d at 155-57).

As stated above, the habeas corpus petition does not have arguable merit.

Accordingly, the motions for appointment of counsel will be denied.  This Court

notes that the remaining factors also weigh against the appointment of counsel

because West has demonstrated the ability to present comprehensible arguments,

the legal issues are relatively simple, and the case does not require expert

testimony.

    F.    *Certificate of Appealability*

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  For the reasons set forth in this Memorandum, this Court will not issue a certificate of appealability.

## IV.    CONCLUSION

Based on the foregoing, West's petition for writ of habeas corpus will be denied.  A separate Order follows.